UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN BURTON,<br><br>                                 Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center; PATRICK DIVVER, Field Office Director, San Diego Office of Detention and Removal, U.S. Immigration and Customs Enforcement; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security; and MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security,<br><br>                                 Respondents. | Case No.: 3:26-cv-2627-JES-BJW<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>**[ECF No. 1]** |

Before the Court is Petitioner Darren Burton's ("Petitioner") Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241 ("Petition"). ECF No. 1, ("Pet.").  Pursuant to the Court's Order to Show Cause, (ECF No. 2.), Respondents (the "Government") filed the Response. ECF No. 4 ("Res."). The Court then took the matter under submission. For the reasons set forth below, the Court **GRANTS** the Petition.

//

## I.    BACKGROUND

Petitioner is a citizen and national of Antigua and Barbuda. Pet. ¶ 24. He first entered the United States as a child but in January 2005, he adjusted his immigration status to Lawful Permanent Resident ("LPR"). Pet. ¶¶ 2, 24. In February 2025, Petitioner was awakened at his home by immigration officers and taken into Respondents' custody. *Id*. ¶¶ 26, 64. Based on his criminal record, Respondents charged Petitioner as removable, under 8 U.S.C. §§ 1227(a)(2)(A)(iii) & (a)(2)(B)(i), and initiated removal proceedings against him. *Id*. ¶¶ 2, 67.

Petitioner has been continuously in Respondents' custody since February 2025—approximately fifteen months—and has not been afforded an individualized bond hearing. *Id*. ¶¶ 9, 16, 30. While detained, Petitioner filed an application for Withholding of Removal and Protection under the Convention Against Torture, based on his fear of persecution as an LGBT member and his religion. *Id*. ¶¶ 25, 62. On October 22, 2025, an immigration judge, however, denied Petitioner's request for relief and ordered him removed to Antigua & Barbuda. *Id*. ¶¶ 3, 65. That decision is currently on appeal before the Board of Immigration Appeals. *Id*. ¶¶ 3, 65; ECF No. 1-2 at 4-5.

Accordingly, Petitioner seeks habeas relief on the grounds that his detention, being unreasonably prolonged and having not received a bond hearing, violates the Due Process Clause of the Fifth Amendment; and constitutes arbitrary and capricious agency action under the Administrative Procedure Act. *Id*. ¶¶ 70–101.

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas

corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.   DISCUSSION

The Government's Response focuses on the length of Petitioner's detention and concedes, based on courts' in this district prior decisions, that a bond hearing is warranted. Res. at 1–2. The approximately fifteen months that Petitioner has spent in immigration custody is, without question, concerning. Yet the Government's Response is notably silent on a more fundamental question: whether Petitioner's status as an LPR created a constitutionally protected liberty interest in remaining free from immigration custody that required process, prior to him being detained. *See generally* Res.

This issue has been addressed by the undersigned in prior decisions such as, *Gergawi v. Larose*, No. 3:25-CV-3352-JES-MMP, 2025 WL 3719321, at *2-4 (S.D. Cal. Dec. 23, 2025), and *Velez v. Warden*, No. 3:26-cv-01889-JES-MSB, 2026 WL 972759, at *2-4 (S.D. Cal. Apr. 10, 2026). Although, there, the petitioners' liberty interests did not arise from the Government's adjustment of a noncitizen's immigration status to that of an LPR, the Court finds the implicated legal frameworks are sufficiently analogous to be instructive. The Court, therefore, elects to follow the reasoning stated in *Gergawi* and *Chavarro Velez*, and incorporates it by reference. 2025 WL 3719321, at *2-4; 2026 WL 972759, at *2-4.

### A.   Jurisdiction

Although Respondents do not challenge jurisdiction, the Court addresses this issue, *sua sponte*. Based on the facts of this Petition, the Court finds that 8 U.S.C. § 1252's jurisdiction stripping provisions do not bar it from considering Petitioner's habeas Petition. *See Martinez Lopez v. Noem et al.*, No: 25-cv-2717-JES-AHG, 2025 WL 3030457, at *2-3 (S.D. Cal. Oct. 30, 2025). Further, the prudential administrative exhaustion requirement //

for 28 U.S.C. § 2241 claims is excused. Thus, the Court finds that it has jurisdiction to hear the Petition.

### B. Petitioner has a Constitutionally Protected Liberty Interest

Courts have overwhelmingly recognized that LPRs possess a particularly weighty liberty interest in remaining free from immigration custody. As the Central District of California recently held, "[l]awful permanent resident aliens are the most favored category of [noncitizens] admitted to the United States," because "the immigration laws give LPRs the opportunity to establish a life permanently in this country by developing economic, familial, and social ties indistinguishable from those of a citizen." *Oregel Amezcua v. Noem*, No. 5:26-CV-01070-SRM-AGR, 2026 WL 1048212, at * 5 (C.D. Cal. Mar. 25, 2026) (quoting *Kim v. Ziglar*, 276 F. 3d 523, 528 (9th Cir. 2002) & *Demore*, 538 U.S. at 544). Accordingly, an LPR possesses a "liberty interest in remaining free from governmental restraint," which is "of the highest constitutional import." *Oregel Amezcua*, 2026 WL 1048212, at * 5. (citing *Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1078 (N.D. Cal. 2004)).

Critically, an LPR does not lose their protected interest merely because the Government has initiated removal proceedings or even ordered them removed. *Id*. An LPR retains their lawful status to remain in the country, and the liberty interest that accompanies it, until "entry of a final administrative order of exclusion, deportation, removal, or recission." *Id*.; 8 C.F.R. § 1001.1(p); *see* 8 U.S.C. § 1256; *see also Shin v. Holder*, 607 F. 3d 1213, 1217 (9th Cir. 2010) ("[E]ven where there are grounds to seek deportation or removal, a lawful permanent resident is lawfully present in the United States until a final deportation or removal order is entered.") (quoting *Hernandez de Anderson v. Gonzalez*, 497 F. 3d 927, 943 (9th Cir. 2007)); *Small v. Reno*, 127 F. Supp. 2d 305, 320 (D. Conn. 2000) ("Absent a final order of removal, the petitioner maintains his status as a lawful permanent resident alien, with the constitutional status that accompanies the ties the petitioner has developed during his twenty-plus years of legal residence in this country.").

//

In *Oregel Amezcua*, the court considered the petition of a Mexican national who had obtained LPR status in 2001 and lived in the United States for over two decades. 2026 WL 1048212, at *1. In January 2025, immigration officers stopped him as he was walking home from the hospital, confirmed his name, and placed him in custody. *Id.* Respondents provided no notice of the basis for detention and offered no hearing before or promptly after his arrest. *Id.* at *6. The court found that when petitioner was detained, he was an LPR and, therefore, possessed "constitutionally protected liberty interests." *Id.* at *7. The court held that such interests include a "weighty liberty interest in remaining free from immigration custody" and the right to "support and maintain ties with his family." *Id.* Applying the *Mathews* balancing test, the court found that all three factors weighed in Petitioner's favor, that Respondents had violated his procedural due process rights, and ordered his immediate release. *Id.* at *7–8; *Mathews v. Eldridge*, 424 U.S. 319 (1976).

This Petition is squarely analogous. Like the petitioner in *Oregel Amezcua*, Petitioner was an LPR at the time of his arrest—as his status was adjusted in January 2005. Pet. ¶¶ 2, 24. To date, no final order of removal has been entered against him. *Id.* ¶ 3. Petitioner, therefore, has retained his LPR status and the constitutionally protected liberty interests that accompany it, when he was detained in February 2025. *Id.* ¶ 26; *see Oregel Amezcua*, 2026 WL 1048212, at *7; *see also Shin v. Holder*, 607 F. 3d at 1217. The Government does not contest Petitioner's LPR status or that Petitioner possessed liberty interests, arising from his LPR status. *See generally* Res. Nor does it assert that the removal order against Petitioner is administratively final. *Id.* The Court, accordingly, finds that Petitioner had a constitutionally protected liberty interest in remaining free from immigration custody when he was detained by Respondents in February 2025. *Oregel Amezcua*, 2026 WL 1048212, at *7; *Shin v. Holder*, 607 F. 3d at 1217.

## C.    Respondents Violated Petitioner's Due Process Rights

Having established that Petitioner possessed a constitutionally protected liberty interest, the Court turns to whether he received the process the Fifth Amendment requires. The Court finds that he did not.

Due process ordinarily requires "some kind of a hearing before the [government] deprives a person of liberty." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Where all three *Mathews* factors weigh in petitioner's favor—as they do here—a pre-deprivation hearing is constitutionally required. *See Oregel Amezcua*, 2026 WL 1048212, at *7–8; *Mathews*, 424 U.S. at 335.

First, the private interest affected is substantial. Petitioner had lived in the United States for the majority of his life as an LPR, has many family members with status in the United States (i.e., an elderly father with Lawful Permanent Residence Status; a United States citizen mother; a United States citizen daughter; and United States citizen aunts, uncles, and cousins), and had developed deep community and family ties. Pet. ¶¶ 24, 29. His liberty interest in remaining free from custody and maintaining those ties is, as noted above, of the highest constitutional import. *Oregel Amezcua*, 2026 WL 1048212, at *7. This factor weighs in Petitioner's favor.

Second, the risk of erroneous deprivation was significant. When immigration officers arrived at Petitioner's home in February 2025, they represented that the visit concerned the family vehicle and a criminal investigation. Pet. ¶ 64. When Petitioner stepped outside to speak with them, he was handcuffed and was taken into custody, without being provided a meaningful explanation of the immigration basis for his arrest. *Id*. Respondents failed to provide a pre-deprivation hearing or a prompt post-deprivation hearing. Pet. ¶¶ 16, 51, 99. Had a hearing been afforded, Petitioner may have been able to present his equities and challenge the basis for detention. *See Oregel Amezcua*, 2026 WL 1048212, at *6–7. This factor weighs in Petitioner's favor.

Third, the Government's interest in detaining Petitioner without notice or a hearing is low. In the Response, Respondents do not assert that Petitioner poses a flight risk or danger to the community. *See generally* Res. The administrative burden of a pre-deprivation hearing is minimal compared to the cost of prolonged detention. *See Oregel Amezcua*, 2026 WL 1048212, at *7; *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025). This factor also weighs in Petitioner's favor.

3:26-cv-2627-JES-BJW

All three *Mathews* factors weigh in Petitioner's favor. Petitioner has demonstrated that Respondents failed to provide him with any notice and a meaningful opportunity to be heard before depriving him of his constitutionally protected liberty interest. In doing so, Respondents violated Petitioner's due process rights. *See e.g., Gergawi*, 2025 WL 3719321, at *3-4; *Chavarro Velez*, No. 3:26-cv-01889-JES-MSB, ECF No. 8 at 7; *Oregel Amezcua*, 2026 WL 1048212, at *7–8; *Pinchi*, 792 F. Supp. 3d at 1032; *C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *9 (E.D. Cal. Nov. 3, 2025); *Leiva Flores v. Albarran*, No. 25-cv-09302-AMO, 2025 WL 3228306, at *5; *Faizyan v. Casey*, No.: 3:25-cv-02884-RBM-JLB, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025).

### D.    Petitioner is Entitled to Immediate Release, not a Bond Hearing

Because Petitioner's detention violates his due process rights, the Court must determine the appropriate remedy. The Government's concession that a bond hearing is warranted, addresses only the prolonged detention strand of the analysis. Res. at 1–2. It does not account for the more fundamental due process violation arising from Petitioner's detention, without notice or an opportunity to be heard.

Petitioner is an LPR who had never previously been in removal proceedings. Pet. ¶ 26. Respondents do not assert—therefore, the record does not support—that Petitioner presented a danger to the community or a risk of flight. *See generally* Res. Ordering a bond hearing, after fifteen months of detention without adequate process, would not remedy the constitutional deprivation, rather it would compound it by requiring Petitioner to further justify his entitlement to liberty in proceedings that should never have been necessary from the outset.

The Court therefore finds that immediate release is the appropriate remedy.

### IV.    CONCLUSION

For the reasons discussed above:

(1) The Court **GRANTS** Petitioner's Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241;

//

(2) Because the Court **GRANTS** the Petition and concludes that Respondents violated Petitioner's procedural due process rights, Respondents are **ORDERED** to **IMMEDIATELY** release Petitioner from custody, subject to any conditions of his preexisting LPR status;

(3) Respondents are **ORDERED** to file a Status Report on or before **May 12, 2026**, confirming that Petitioner has been released; and

(4) The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: May 7, 2026

_____

Honorable James E. Simmons Jr.
United States District Judge